The first case for argument this morning is 17-2169 Vedanti Licensing v. Google. Mr. Asher? Are you the appellant? Appellant, yep. So you're in the wrong, aren't you in the wrong seats? Yes. We had a case yesterday and I think we got sued. Oh, okay. All right. Well, we got to keep our heads on straight then because this is confusing for us. So, all right. You're the appellant. No, I mean, we'll just stay here for now. We'll just try to focus on. So you go first. Mr. Asher? Yes, please proceed. The PTAP failed to properly construe the 339 patent claims as a two-stage computer-implemented processing system. How the computer processes the frame data was critical. A computer process in a first stage generates data defining a region or, in Claim 7, an optimized matrix that will ultimately be transmitted to a receiving system for generating a display. And before transmission, a second stage process has received that region-defining data and selects pixel data. The specification describes the advantages. System 100 determines the optimal data for transmission based on the end use of data. Further, the number of pixels to transmit can be decided on a region-by-region basis within the frame or frame-to-frame. The pixel selection system can be adjusted in any number of ways. Whereas in SPRIGS, the prior art, as described in Google's petition, SPRIGS discloses a coding process that outputs region data and pixel data. What SPRIGS teaches, it's that one coding process that produces both. Can I just step back for a minute to put this all in context? So I want to make sure I understand. The context and the dispute here is that the board said it's not required that the analysis system be a separately identifiable component from the pixel selection. Correct. So that's the issue we're talking about. So why don't you point us specifically to the best you have, I guess, in the specification or whatever, to why the board erred in its conclusion. Well, in the claims? Yes. The claims are separate. There's a separate element for the analysis system. There's a separate element for the pixel selection system. In the specification, you can look at the drawings. In the first figure one, there's a pixel selection system and a frame analysis system. And they're separately described in figure two is the frame analysis system. Figure three is the pixel selection system. They're two separate systems. In the specification, there's reference to that the pixel selection system selects pixels from a predefined matrix or region. It's the whole gist of the patent. And it's confirmed by the claims. And the claims specify that there's a separate element for each. Yes. Well, there's no dispute, I don't think, that they have to be separately identifiable processes. Okay. So the dispute, I mean, I'm not telling you, I'm asking you if I'm correct, that the dispute lies in whether they must be separately identifiable components or structures. Am I right in my understanding? I'm just trying to figure out if I'm correct in seeing what the dispute is between you and your friend on the other side. I have a dispute with the decision. The decision did not treat the pixel selection system and the analysis system as separate identifiable components. I'm not sure if Google has a problem with that at all. Their briefs seem to say that there was nothing preventing the two systems from being in the same computer, which we all accept. But what did the board say? The board took that further. When I indicated in oral hearing before the PTAC court that they could both be in the same computer, I followed up by saying, but they have to be separately identifiable processes within that computer. And they took that as a concession that they were, that separateness wasn't required. But didn't the board consider those two separate functions in its analysis? They did talk about the separate functions and it's not clear to me how, but it's not clear that they identified a separate pixel selection process that corresponds to the claims. They seem to be satisfied that everything was there, that pixel data came out at the end, that region data came out at the end, but they didn't look to the process and how you get there. This is a new process. And the process was a two-stage one, which produced the regions first, the region data, and then selected pixels from each region. And they were not diligent about finding a selection process that performed as claimed. So, I mean, is your argument that they, that they failed to recognize some sort of a timing requirement that one needs to be performed before the other? I don't know if I return it. One before the other certainly is required, yes. And that was not clear from here. It was not clear that one identified a region, that defined a region from which one was selecting pixels. So understand that this is a data reduction process. We're trying to reduce the amount of data that's being sent. So the pixel selection process involves picking individual pixels from a choice of multiple pixel data. But it seems to me that they were certainly aware of both of these functions. And their analysis includes a discussion about both of these functions. And the conclusion was that the references sustained the rejection. Why is that wrong? It's wrong because all they said was that selection happens somewhere in the coding process. They talk about their expert who said there are certain steps that do region generation and additional steps that do pixel selection. But there was no, I don't even know what they're pointing to. They pointed to different things at different times. So in certain places they've taken on this new approach that's not present in the petition. In which a pixel, which is a coordinate and its values. And they've dissected it. And they say identifying the coordinates for the pixel is region data. And then retrieving the value for the pixel data is selecting pixel data. There's no selection there. The address is pointing to a pixel and it's retrieving the pixel's value. So there's no selection. And moreover, so that's the difference. So why don't you spend a couple minutes, if you don't mind, on your final argument. Which is your due process rights and the failure to allow you an opportunity. Because it seems here there were several steps. Including that you filed a sur-reply and that this came up at various points. Allowing you an opportunity to give your view. It did not come up until the reply. The petition was all in terms of the coding process of SPRGS producing coordinates and values. In the petition they refer to the end result as producing region data. The blocks defined by the coordinates and the values. They refer to the same thing for the pixel selection. The coded output. These values are the values in the middle. S, A, B, C, and D. Indicate pixel coordinates and values. These values are the pixel data. When it came to the reply. After we had demonstrated that they had failed to show a separate process for generating region. And one that followed that received the region data to produce selected pixel data. They had to recast their arguments. Can you summarize to me. It looks to me like the final written decision by the board pretty much mirrors the institution decision. Your argument. Not at all. It cites throughout the petitioner's reply. And the second supplemental declaration from the expert. Who completely changed the approach that they were taking. In the reply. All of a sudden they are separating out a pixel into a coordinate and its value. The way SPRGS works. Is that. It looks at the corner pixels of a block. And it has to determine whether that is going to be a region. It does an interpolation based on the corner pixel values. And compares that with the actual values. And determines if those corner pixels are going to be representative. If it is, it's defined a region. Moves on to the next. So it's not until it's defined a region. That you can. You can go on to pixel selection, but there is no pixel selection following. Defining the region because. No other pixels can be selected. Only the corner pixels have been approved. For being representative of the. Of the block. Your due process argument, as I understand it is predicated on the. Having violated CFR 42.123 B. When it relied on a supplemental declaration. I know that you raise other issues as well, but that seems to be the crux of your issue. As I understand it, your opponent explains that you never made this argument below. And that it's therefore waived. Do you have any response to that? Yes, there was a teleconference before the board. We asked for the opportunity to motion to move to strike the declaration. And they refused us any opportunity to file such a motion. So we had no opportunity to submit any reasons. We asked for the opportunity to submit a declaration in response to the 125 paragraph declaration telephone conference. You made a number of rejection number of objections, including one based on 42.23 B. But you never mentioned 42.123. Why why is that not waiver? In the telephone conference, you requested to make. A bunch of. Objections, and they rejected your ability to file paper, but you never mentioned it. Did you. I don't have a transcript of Nicole. And you have paper objections at page 402 of the appendix and 403. You wrote paper objections as well. Correct. Am I correct about that? Yes, those are evidentiary. Yeah, but you didn't. This one wasn't included in it. Yes, this is it's a different issue. One is evidentiary that you're allowed to object on. Like, you're saying things like that with the 42.123 was a was goes to the motion to strike. It should have been excluded. It shouldn't have been admitted because they didn't follow the rules of the. I'm sorry, I'm confused. Why couldn't you have mentioned it in those same objections that you filed that are listed in the appendix? Those objections are designed. It's clear in the rules and practice that those objections deal with evidentiary issues. 42.123 is a procedural issue that they failed to follow. You're into your rebuttal, so why don't we hear from the other side? You're the appellee, right? We will switch the signs after our two arguments so that everybody else is forewarned and it will help you through the rest of the day. You have no idea how set we are in our way. So to be clear, your honor, good morning and may it please the court. The judgment should be affirmed, even though we're on the side of the table and the judgment should be affirmed, your honor, for three basic reasons. First, the board construed the claims properly under the broadest reasonable interpretation standard, a term I note, which my friend didn't even attempt to deal with. In talking about his claim construction argument. Secondly, the board's decision is supported by substantial evidence. And thirdly, whether or not there was waiver, there was no due process violation here in this case. Let me start with the claim construction argument that my friend raised. SPRGS is actually relatively simple to explain. In column two, it refers to operations one, two and three. Operation one defines a region and it says that if that region is satisfactory, then we're done and we can transmit that. And if not, we move to operation three and we might repeat operation three until the frame is subdivided to the point where it's ready for transmission. And that takes place in operation two. So what my friend says is the analysis system can be found in operation one working with operation three. And what my friend says is the pixel selection system can be found in operation two. That's effectively what the board found both in its initial determination to grant review of this IPR and in its final decision. And Chief Judge Prost, I think you pointed out that there was no, you didn't see a distinction between the initial, the institution decision. Excuse me, I need to get my ID correct here. The institution decision at page, appendix 99, tracks exactly, and it even says here at page 99, that Google maps a SPRGS selection of corner pixel values for transmission to the pixel selection of claim one. So any notion that the corner pixel values weren't in play at that point is belied by the record in this case. The case law in this area, by the way, is very clear and it's established predominantly by the legion of cases that we've cited in our brief led by the applied medical research case. Just because there are separate limitations, that doesn't create a presumption that there are separate components in either an accused device or in an invalidating reference as we have here. And the fact that this is obvious takes us even farther afield from that. My friend said that his best argument from the specification was the claims as well as figures 1, 2, and 3. I'd note that figures 1, 2, and 3, as described in column 2, lines 1 to 11, are all described as exemplary. They are not as described in the Gauss invention, the Gauss case on which my friend relies so heavily. They are not described in the specification in any way as quote, the invention. Or this is the point of the invention, not at all. I think one last observation is that my friend moves back and forth between calling this a system or a process. This is a system claim, it's not a method claim. And with regard to what the analysis system and the pixel selection system do, that's set forth in operations 1, 2, and 3 of the reference. With regard to the due process objection, I think that the argument I've just given, with regard to showing you where the argument was made, where it's been maintained, should satisfy the court's response to what my friend has said. But to the extent my friend is saying that there was new evidence offered, or a new theory offered in the reply declaration, that simply isn't true. Dr. Grindon, in most places where my friend cites, refers back to in cross-references his first declaration. This was just an elaboration on what he had already said. Well, was that an elaboration based on a response to what the patent owner had said? Absolutely, and that's exactly why a reply declaration is needed, and why it's allowed by the rules. Now, I'd add furthermore that the argument here is a constitutional dimension objection here. And the argument is that they had no opportunity to be heard. They clearly had notice, but they claim they didn't have an opportunity to be heard. And I want to point out to the court that at page A122, the board assured them that if there were improper arguments and evidence presented with petitioner's reply, the board would only consider arguments, quote, properly rooted in the petition. And where the board made its decision, it did exactly that. So did it rely on the supplemental declaration? No, absolutely. Absolutely it did, as was its right. And remember that although they didn't get to put in an additional declaration, they did get to put in objections. Yes, my friend, my friend, Vedanti. They got to put in objections. They got to take a second deposition of the expert. They got to put in a surreply. They got to make written objections, and they got to give oral argument. All of those were adequate in the Belden v. Birktec case from this court to avoid a due process problem. There's no due process problem here. And if you look at page Appendix 26 where the board has the guts of its decision on this issue, you'll see that everything is rooted in either the patent or the original Grindon report in addition to the supplemental one. So unless the court has further questions, we're perfectly happy to rest on our briefs at this point. Thank you. Thank you, Your Honor. After Operation 1 is determined that the block can be a region, the Operation 2 states the addresses and values of the points A, B, C, and D are transmitted. That's what it says in the patent, and that's all that happens is transmitted. There's no selection. Those pixels had already been approved in determining the region. So that was not a selection process. Claim 7 is another claim that's written a little differently, and it deals with an optimized matrix data. One has to optimize the matrix data before selecting pixel data. Optimize is in the past tense. It had to have happened. In order to go to the next step of doing pixel selection based on optimized matrix data, unless that's been optimized and determined to be a region, the claim is not satisfied. So their attempt to look at pulling out the corner coordinates as region data before selecting or retrieving the corner's pixel data is simply not commensurate with Claim 7, because there's no optimization of those region data. Those are just proposed corner coordinates for a new block, and they're merely retrieving the pixel data for proposed corner pixels. And so that's not a region. It hasn't been determined to be optimized in a region, and it certainly is not an optimized matrix, because it has not yet passed the interpolation test. Any questions? Thank you. We thank both sides and the case is submitted.